# IN THE SUPREME COURT OF TEXAS

No. 20-0173

WWLC INVESTMENT, L.P., PETITIONER,

v.

SORAB MIRAKI, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS

**PER CURIAM**

Petitioner WWLC Investment, L.P., a Texas limited partnership, seeks a bill of review vacating a default judgment taken against it by respondent Sorab Miraki. WWLC contends that it was not properly served with process. A limited partnership's agents for service of process are its general partner, TEX. BUS. ORGS. CODE § 5.255(2), and its registered agent, *id.* § 5.201(b)(1). The evidence establishes that Miraki served only a WWLC employee described as its "owner," "president," and "CEO." Accordingly, we hold that WWLC demonstrated that it was not properly served. We reverse the court of appeals' judgment and remand to the trial court for further proceedings consistent with this opinion.

WWLC leased commercial property to Miraki effective October 2013 for use as a specialty food market and restaurant. The lease term was five years, with monthly rent starting at about $4,400 in the first year and increasing to about $5,400 for the remainder of the term. Wendy Chen,

then WWLC's owner and president and later its CEO, executed the lease for WWLC. Two years into the lease, Miraki stopped paying rent, complaining that WWLC had not made promised repairs. WWLC had Miraki evicted, and he sued WWLC in November 2015 for breach of lease, fraud, and violations of the Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE ch. 17.

Miraki's process server tried five times over the course of about a week in January 2016 to personally serve Chen at a house that she owned, but the attempted service was unsuccessful. Miraki then obtained an order for substituted service under Rule 106 of the Texas Rules of Civil Procedure[1] by attaching a copy of the petition and citation to the front door of Chen's house. Miraki accomplished that substituted service on April 6. When WWLC did not answer, Miraki took a default judgment against it in November 2016 for $382,543.26 in actual damages, $738,771.60 in punitive damages, and $30,000 in attorney fees.

Miraki made no attempt to serve WWLC through its registered agent, HPZ International, Inc. WWLC identified HPZ International, Inc. as its registered agent in name-change and assumed-name documents filed with the Secretary of State in 2011. By those filings, WLC Investment, L.P., changed its name to WWLC, and WWLC adopted WLC Investment, L.P. as an assumed name. The Business Organizations Code required both documents to be filed by WWLC's general partner, TEX. BUS. ORGS. CODE § 153.051(3), and both were filed by HPZ. Chen signed on HPZ's behalf as a person "authorized" to do so. The record does not reflect what Chen's position was at HPZ. As it happened, HPZ forfeited its charter on January 29, 2016.

On June 1, 2017, a month after it first learned of the judgment from receipt of a demand

---

[1] We amended Rule 106 effective December 31, 2020 to provide for substitute service of citation by social media. Order Amending Texas Rules of Civil Procedure 106 and 108a, Misc. Docket No. 20-9103 (Tex. Aug. 21, 2020), https://www.txcourts.gov/media/1449613/209103.pdf.

for payment from the constable, WWLC sued to enjoin Miraki from executing on the formerly leased property and for a bill of review. The trial court heard both two weeks later and denied all relief. Though the court did not make findings of fact, it stated at the hearing on WWLC's motion for new trial that Chen had to be its general partner because "she was the only person" involved in WWLC. The court of appeals affirmed. ___ S.W.3d ___ (Tex. App.—Dallas 2018). Noting that HPZ's charter had been forfeited while Miraki was trying to serve Chen and that Chen was WWLC's president and owner, the court concluded that the trial court did not abuse its discretion in finding that service on WWLC was not defective. *Id.* at ___.

"A bill of review is an equitable proceeding brought by a party seeking to set aside a prior judgment that is no longer subject to challenge by a motion for new trial or appeal. Bill of review plaintiffs must ordinarily plead and prove (1) a meritorious defense to the underlying cause of action, (2) which the plaintiffs were prevented from making by the fraud, accident or wrongful act of the opposing party or official mistake, (3) unmixed with any fault or negligence on their own part." *Caldwell v. Barnes*, 154 S.W.3d 93, 96 (Tex. 2004) (per curiam) (citations omitted). But plaintiffs alleging that they were not properly served are excused from proving the first two elements. They need only prove the third, *id.* at 96–97, which "[p]roof of non-service . . . will conclusively establish," *id.* at 97.

"For well over a century, this court has required that strict compliance with the rules for service of citation affirmatively appear on the record in order for a default judgment to withstand direct attack. There are no presumptions in favor of valid issuance, service, and return of citation in the face of a [direct] attack on a default judgment." *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994) (per curiam) (citations omitted). A bill of review is a direct attack on a

judgment. *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 271 (Tex. 2012) ("A direct attack—such as an appeal, a motion for new trial, or a bill of review—attempts to correct, amend, modify or vacate a judgment . . . .").

As noted at the outset, service on a limited partnership may be made on its general partner or registered agent. TEX. BUS. ORGS. CODE §§ 5.201(b)(1), 5.255(2). The evidence establishes that Chen was neither and that HPZ was both. Chen testified that she was WWLC's president, the title she used in executing the lease to Miraki, and later its CEO. The "president" of a limited partnership is defined by statute as the individual "designated" to hold that title under the "entity's governing documents" or the "officer . . . authorized to perform the functions of the principal executive officer." *Id.* § 1.002(70). An "officer," like a CEO, "means an individual elected, appointed, or designated as an officer of an entity by the entity's governing authority or under the entity's governing documents." *Id.* § 1.002(61). An officer need not be a general partner and is not one by virtue of holding the office. Service on a limited partnership, unlike a corporation, is not authorized to be made through an officer. *See id.* § 5.255(1)–(2) (authorizing service on a "corporation['s]" president but omitting a similar authorization for limited partnerships). Chen referred to herself as WWLC's "owner." An "owner" of a partnership is statutorily defined as "a partner." *Id.* § 1.002(63)(B). "'Partner' means a limited partner or general partner." *Id.* § 1.002(66). One could not infer from the fact that Chen was WWLC's owner whether she was a limited partner, not authorized by statute to accept service on the partnership, or a general partner.

While the trial court found that Chen's testimony established that she was the sole person involved with WWLC, that finding, standing alone, does not qualify her as WWLC's general partner. A limited partnership's general partner is "a person who is admitted to a limited

partnership as a general partner in accordance with the governing documents of the limited partnership." *Id.* § 1.002(33). The record does not include WWLC's governing documents. Moreover, Chen testified that she was not WWLC's general partner and that HPZ was. A corporation, like HPZ, may serve as a limited partnership's general partner. *Id.* § 1.002(69-b) (defining a "[p]erson" as including "a corporation"). The evidence further shows that HPZ acted as WWLC's general partner. HPZ filed a certificate-of-formation amendment and an assumed-name certificate with the Secretary of State to complete a name change for WWLC. In executing both documents, Chen expressly invoked HPZ's authority to file documents on WWLC's behalf. By statute, only a limited partnership's general partner is authorized to make those changes. *Id.* § 153.051(3) (requiring "[a] general partner" to "file a certificate of amendment" with the Secretary for any "change in the name of the limited partnership").

Miraki additionally argues that service on Chen was proper because she served as president and registered agent of both HPZ and WWLC. But there is no evidence that Chen was HPZ's president, only that she was its "authorized person" to sign the documents filed for WWLC. And there is no evidence that Chen served as either HPZ's or WWLC's registered agent. Instead, the evidence shows that only HPZ, not Chen, was WWLC's registered agent.

Finally, Miraki argues, and the court of appeals reasoned, that service through Chen was proper because HPZ forfeited its corporate charter on January 29, 2016. ___ S.W.3d at ___. But all five of Miraki's process server's attempts to serve Chen occurred on or before January 29, when he could have served HPZ. Moreover, a corporate general partner that loses its certificate of formation remains a limited partnership's general partner for at least 90 days unless the partnership agreement or the partners by written consent provide otherwise. TEX. BUS. ORGS. CODE

5

§ 153.155(a)(10)(B). The record contains no evidence of either. Miraki accomplished substituted service on Chen on April 6—only 68 days after HPZ forfeited its charter and well within the period in which he could have served HPZ as WWLC's general partner.

In sum, WWLC met its burden to prove lack of proper service and is therefore entitled to bill-of-review relief. Accordingly, without hearing oral argument, *see* TEX. R. APP. P. 59.1, we grant WWLC's petition for review, reverse the court of appeals' judgment, and remand the case to the trial court for proceedings consistent with this opinion.

**OPINION DELIVERED: June 18, 2021**